P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
LAW OFFICES OF P. STERLING KERR
2450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
Telephone No. (702) 451–2055
Facsimile No. (702) 451-2077
Email: sterling@sterlingkerrlaw.com
Email: george@sterlingkerrlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| INTERNATIONAL MARKETS LIVE, INC., a New York corporation dba iMARKETSLIVE;<br><br>Plaintiffs,<br><br>v.<br><br>MATTHEW THAYER, an individual;<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>1) BREACH OF CONTRACT;<br>2) VIOLATION OF UNIFORM TRADE SECRETS ACT<br>3) DEFAMATION PER SE;<br>4) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS;<br>5) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE<br>6) FRAUD |

COMES NOW, Plaintiff by and through its attorneys, the Law Offices of P. Sterling Kerr, complain and allege against Defendant MATTHEW THAYER as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff International Markets Live ("IML") is a New York limited liability company with corporate offices in Las Vegas, NV.

2.      Defendant Matthew Thayer ("Thayer") is an individual residing in Florida and/or Minnesota, who conducts business in Nevada directly related to the claims in this Complaint.

Page **1** of 12

3.      This Court has diversity subject matter jurisdiction of this action. The Court has diversity jurisdiction under 28 U.S.C. § 1332 because no Plaintiffs and Defendants are residents of the same state, and because the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

4.      Venue is proper as IML has corporate offices in the state of Nevada, and all of the parties conduct business in the state of Nevada.

## GENERAL ALLEGATIONS

5.      IML is a company that provides its customers with educational tools and information to trade foreign and crypto currencies ("Forex Trading").

6.      IML's products are distributed under a direct sales model and are offered to individuals on a subscription basis. IML's products help IML provide customers with technology, education, and research for Forex Trading.

7.      IML contracts with IBOs in an independent contractor relationship to effectuate the direct sales model of its products and services. These contracts are called Independent Business Owner ("IBO") Agreements.

8.      All IML IBOs become IBOs of IML products only after entering into an IBO Agreement requiring the IML distributor to agree to IML's Policies and Procedures.

9.      The IBO states that each distributor has carefully read and agrees to comply with IML's Policies and Procedures.

10.      IML's Policies and Procedures require, among other things, that:

•      IBOs may not directly or indirectly recruit other IBOs or customers for other network marketing businesses;

•      IBOs may not participate as a distributor in another network marketing company that sells and distributes similar products to IML;

- IBOs must not sell, or attempt to sell, any competing non-IML programs, products, or services to IML IBOs or customers;

- The Confidentiality Provision in the Policies and Procedures states:

During the term of the Agreement, Company may supply to Independent Affiliates confidential information, including, but not limited to genealogical and Downline reports, customer lists, customer information developed by Company or developed for and on behalf of Company by Independent Affiliates (including, but not limited to, credit data, customer and Independent Affiliate profiles and product purchase information), Independent Affiliate lists, manufacturer and supplier information, business reports, commission or dales reports and such other financial and business information which Company may designate as confidential. All such information (whether in written or electronic format) is proprietary and confidential to Company and is transmitted to Independent Affiliates in strictest confidence on a "need to know" basis for use solely in Independent Affiliates business with Company. Independent Affiliates must use their best efforts to keep such information confidential and must not disclose any such information to any third party, or use this information for any non-company activity directly or indirectly while an Independent Affiliate and thereafter.

11.     On or about February 6, 2018, Defendant Thayer entered into an IBO Agreement requiring the IBO to agree to IML's Policies and Procedures.

12.     On or about January 27, 2020, Thayer entered into a second agreement with IML to become an educator (hereinafter "Educator Agreement").

13.     As part of the Educator Agreement there is a Code of Ethics clause which states,

It is the policy of the Company to provide our Code of Ethics and Business Conduct, which will serve as a guide to proper business conduct for all Educators. We expect all Educators to observe the highest standards of ethics and integrity in their conduct. This means following a basic code of ethical behavior that includes the following: proper language used, build trust and credibility, respect for the individual, create a culture of open and honest communication, uphold the law, compliance, accountability, corporate recordkeeping, avoid conflicts of interest with growth challenges, income claims, and guaranteed growth.

14.     Included in the Educator Agreement is also a non-compete clause which states,

Non Competition Disclosure. For a period of one (1) year after the Educator is no longer consulting with IML, the Educator will not, directly or indirectly, either as proprietor, stockholder, partner, officer, employee or otherwise, distribute, sell, offer

to sell, or solicit any orders for the purchase or distribution of any products or services which are similar to those distributed, sold or provided by IML during the one (1) year preceding the Educator's termination of consultancy with IML, to or from any person, firm or entity which was a customer of IML during the one (1) year preceding such termination of consultancy.

15.    At all times relevant herein, Thayer knew and was aware of the terms of the IML Policies and Procedures and the Educator Agreement, including the prohibitions against recruiting IML IBOs and traders to leave IML, the prohibition against working for a competitor of IML, and the prohibition against providing Confidential Information and intellectual property to anyone outside of IML.

16.    In September of 2021, IML performed a compliance audit on all of the academy educators, including Thayer.

17.    In the audit, IML performed a thorough review of GoLive sessions, social media accounts, Telegram channels, as well as private Discord groups.

18.    IML compliance investigators found that Matthew Thayer was promoting brokers that were overseas and illegally marketing their services in the United States.

19.    Thayer had an "onboarding" site for new customers, which IML discovered had multiple affiliate links to these brokers.

20.    IML made contact with the affiliate company, FinMinistry, which is a partner of the illegal brokers, and a FinMinistry representative advised IML that Thayer's account was fake, for marketing use only, and that he is a paid partner within their company.

21.    The FinMinistry representative showed IML how to create a fake account, so that viewers would see the gains and open an account, and he would receive commissions on these accounts.

22.    Through this scheme, Thayer was using his position as a IML educator to promote brokers for the purpose of gaining affiliate commissions, and using a fake account to gain a following to do so.

23.     Thayer falsified his trading account results to the academy director at that time, and also to the owners.

24.     Soon after learning about this fraud on IML, it's IBOs and customers, IML executives questioned Thayer.

25.     During this questioning, Thayer admitted that his account was fake, and that he did accept commissions from the brokers.

26.     IML immediately terminated Thayer and advised him to remove any mention of IML or his educator status from all sites he owns as well as social media, since his position was obtained by deception, and he continued to deceive the company and the customers.

27.     Thayer continues to market himself as a former educator of IML with massive trading success which is an intentional misrepresentation.

28.     Thayer breached the IML Policies and Procedures and the Educator Agreement.

29.     Thayer breached his contract with IML by violating numerous sections of the IML Policies and Procedures including the Code of Ethics.

30.     Thayer breached the Educator Agreement by violating the Non-Compete Clause as Thayer is now soliciting IML IBOs and clients to his competing company within one-year of his termination.

31.     Thayer has conspired to bribe, solicit, recruit, and entice other IML IBOs, customers, and traders away from IML.

32.     Thayer bribed, solicited, recruited, and enticed other IML IBOs and traders away from IML.

33.     Thayer intentionally and knowingly bribed, solicited, enticed, and recruited IML IBOs and traders to leave IML.

34.     Thayer knowingly, intentionally, and wrongfully took Confidential Information and intellectual property from IML.

35.     Thayer is knowingly, intentionally, and wrongfully using Confidential Information and intellectual property he took from IML.

36.     Thayer is knowingly and intentionally publishing false statements on social media platforms regarding IML, its employees, and IBOs.

37.     Thayer published these false statements against IML in order to promote himself.

38.     Additionally, Thayer's fraudulent conduct has forced IML to revise and rebrand an entire product line.

39.     IML has suffered substantial financial harm as a result of Thayer's wrongful conduct.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract against Defendant)

40.     IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

41.     Thayer entered into, or otherwise agreed to be, and was bound by contracts with IML.

42.     At all relevant times herein, IML performed the obligations and duties required of it by the contracts it had between IML and Thayer.

43.     Thayer breached his contract with IML by failing to conform to the terms of their respective agreement(s), namely by taking confidential and trade secret information from IML for his own use and violating the non-compete and ethics portions of the contracts.

44.     The breaches of the contract by Thayer have caused damages to IML excess of one million dollars ($1,000,000.00).

45.    IML is entitled to its reasonable attorney's fees due to Defendant's breaches of the contacts.

## SECOND CLAIM FOR RELIEF
### (Misappropriation and Violation of Uniform Trade Secrets Act – Nevada Revised Statues Chapter 600A against Defendant)

46.    IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

47.    Thayer acquired IML's trade secrets by an improper means, including stealing or misappropriating the trade secrets from IML.

48.    Thayer misappropriated IML's trade secrets by disclosing the trade secrets without express or implied consent from IML, including those trade secrets that were obtained without authorization from IML.

49.    Thayer further misappropriated IML's trade secrets by using the trade secrets without express or implied consent from IML.

50.    Thayer had a duty to maintain the secrecy of IML's trade secrets.

51.    As a result of Thayer's misappropriation of IML's trade secrets, IML has suffered damages to be determined at trial in excess of one million dollars ($1,000,000.00).

52.    IML is entitled to exemplary damages due to Thayer's willful and malicious misappropriation of IML's trade secrets in excess of one million dollars ($1,000,000.00).

53.    IML is entitled to its reasonable attorney's fees and costs due to Thayer's willful and malicious misappropriation of IML's trade secrets.

## THIRD CLAIM FOR RELIEF
### (Defamation Per Se against Defendant)

54.    IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

55.     Thayer made statements on social media which tend to harm the reputation of the IML in the estimation of the community and deter third persons from associating or dealing with IML.

56.     The statements are false.

57.     The statements were intentionally published on the internet.

58.     The statements constitute the imputation that IML has a lack of fitness for trade, business, or profession.

59.     As a direct and proximate result of Thayer's defamatory acts, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

60.     It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

**FOURTH CLAIM FOR RELIEF**
(Tortious Interference with Contractual Relations against Defendant)

61.     IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

62.     IML had contractual relationships with customers and individual representatives who are receiving educational products for Forex markets in exchange for monetary compensation.

63.     Defendant knew of these relationships.

64.     Defendant spread false information and used IML's confidential information and trade secrets to form relationships with IML's customers for his gain.

65.     Defendant's conduct was not legally justified.

66.     As a direct and proximate result of Defendant's interference with IML's contractual relationships, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

67.    It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

**FIFTH CLAIM FOR RELIEF**
(Tortious Interference with Prospective Economic Advantage against Defendant)

68.    IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

69.    IML had prospective contractual relationships with customers and individual representatives who desired to participate in receiving educational products for Forex markets.

70.    Defendant knew of these prospective relationships.

71.    Defendant spread false information and used IML's confidential information and trade secrets with the intent of preventing and inhibiting IML's relationships with the prospective customers.

72.    Defendant's conduct was not legally justified.

73.    As a direct and proximate result of Defendant's interference with the prospective customer relationships, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

74.    It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

**SIXTH CLAIM FOR RELIEF**
(Fraud against Defendant)

75.    IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

76.    Thayer made false representations to IML, IML IBOs and customers when he posted false trades on IML platforms.

77.    At the time that Thayer made the said representations, he knew the representations to be false as he later admitted.

78.    Defendant intended to induce IML, IML IBOs, and customers to act in reliance upon the false representations set forth above so that he could be enriched.

79.    IML relied upon Defendant's representations in giving Thayer an educator platform until the investigation revealed that he was committing the fraud.

80.    As a direct and proximate result of Defendant's false representations, Plaintiff have been harmed in an amount in excess of $1,000,000.00.

81.    Due to Defendant's fraudulent actions, Plaintiff is an entitled to award of punitive damages to punish Defendant and to make an example of Defendants in an amount in excess of $3,000,000.00.

82.    Plaintiff has been compelled to retain the services of an attorney to prosecute this action and, therefore, Plaintiff is entitled to reasonable attorney's fees, costs and interest as damages of suit incurred herein.

83.    Defendants, in a combination of two or more persons, conspired to commit unlawful acts against IML.

WHEREFORE, PLAINTIFF PRAYS FOR
THE FOLLOWING RELIEF AGAINST DEFENDANTS:

1.  For Damages in an amount greater than $1,000,000.00 as a result of Defendants' unlawful actions;

2.  For injunctive relief to enjoin the Defendants from the following:

- Defendants shall immediately refrain from using any IML customer list, trademark, trade secret, program information, or any other confidential information and/or materials, including downlines, back-office data, binary options trading software, and binary options trading algorithms;

- Defendants shall immediately refrain from disclosing any IML customer list, trademark, trade secret, program information, or any other confidential information and/or materials;

- Defendants shall immediately return any equipment, or other materials, including but not limited to, hard copies of documents and/or data, electronic copies of documents and/or data, emails, and any other material containing or referring to any IML customer list, trademark, trade secret, program information, or any other confidential information and/or materials;

- Defendants shall immediately refrain from conducting and soliciting any business, accepting any employment by or rendering professional services to, any person or organization that is or was a IML distributor, trader, and/or client, which includes that IGG shall not conduct business with those Defendants who are former IML IBOs or traders; and

- Defendants shall immediately refrain from soliciting, recruiting, bribing, and/or enticing IML IBOs and/or traders to violate their contracts with IML and/or misappropriate IML's Confidential Information and/or intellectual property.

3. For an award of pre-judgment interest, as well as reasonable attorneys' fees as both normal and special damages, and other costs; and

///

///

///

4. For such other and further relief that this Court deems just and proper.

Dated this 14th day of January, 2022

LAW OFFICES OF P. STERLING KERR

/s/ P. Sterling Kerr, Esq.
P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
LAW OFFICES OF P. STERLING KERR
2450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@sterlingkerrlaw.com
Email: george@sterlingkerrlaw.com
*Attorneys for Plaintiff*